IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG



RICHARD THOMPSON,

Plaintiff,

v.                                                    Civil Action No. 1:01CV151

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction.

A.     Background.   Plaintiff, Richard Thompson, "Claimant," filed his Complaint on

October 2, 2001, seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by

Defendant, Commissioner of Social Security, "Commissioner."[1]   Commissioner filed her Answer

on December 13, 2001.[2]  Claimant filed  his Motion for Summary Judgment on May 28, 2002.[3]  On

July 26, 2002, Commissioner filed her Motion for Summary Judgment.[4]

B.     The Motions.

1.     Claimant's Motion for Summary Judgment (Docket No. 16).

2.     Commissioner's Motion for Summary Judgment (Docket No. 19).

---

[1] Doc. No. 2.

[2] Doc. No. 8.

[3] Doc. No. 16.

[4] Doc. No. 19.

C.    Recommendation.

   1. I recommend Claimant's Motion for Summary Judgment be DENIED because the Appeals Council failed to indicate the weight it gave to a consulting physician's report and did not make specific findings regarding the report.

   2. I recommend Commissioner's Motion for Summary Judgment be DENIED for the same reasons set forth above.

   3. I recommend this matter be REMANDED to the Appeals Council to make specific findings regarding the consulting physician's report and to indicate the weight it gave to that report.

<h2 align="center">II. Facts.</h2>

<h3 align="center">Procedural History</h3>

Claimant filed for Disability Benefits and Supplemental Security Income ("SSI") on May 3, 1991. Benefits were denied initially and upon reconsideration. A hearing was held May 12, 1992 before an Administrative Law Judge (ALJ). The ALJ's decision dated September 22, 1992 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on April 16, 1993. [5]

Claimant filed his current application for SSI on January 30, 1998.[6] Benefits were denied initially and upon reconsideration. A hearing was held July 26, 1999 before an ALJ. The ALJ's decision dated October 28, 1999 denied the claim finding Claimant not disabled within the meaning

---

 [5] For purposes of this Report and Recommendation, this decision will be referred to as "Thompson I".

 [6] For purposes of this Report and Recommendation, this case will be referred to as "Thompson II" or "this case".

of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on August 14, 2001. This action was filed and proceeded as set forth above.

## Personal History

Claimant was born March 10, 1949. He was 50 years old on the date of the hearing before the ALJ. Claimant has an eleventh grade education, can read and write, and his past relevant work experience included employment as a project manager and operations manager for asbestos removal companies.

## Medical History

The following medical history is relevant to the time period during which time the ALJ concluded that Claimant was not under a disability, specifically, September 23, 1992 through October 28, 1999.

<u>Medical Records</u>

**MVA Fairmont Clinic**

<u>X-Ray Report, May 13, 1998</u> (Tr. 429-431).

- Thoracic spine: No significant bony abnormality demonstrated.

- Cervical spine: No significant bony abnormality demonstrated.

- Lumbosacral spine: Presence of a small hypertrophic spur along the anterior and inferior aspect ob the body of L1; narrowing of L5-S1 disc space; and sclerosis of the posterior elements of L5-S1.

<u>Treating Physician</u>

<u>David Leveaux, M.D.</u>

<u>Treatment Notes, June 12, 1997 to May 26, 1998</u> (Tr. 448 - 452).

- Prescribed Oxycontin for pain

<u>November 5, 1998 Residual Functional Capacity Assessment</u> (Tr. 456 - 464).

- Primary Diagnosis: Fibromyalgia

- Secondary Diagnosis: Cervical/Thoracic Disc Disease

- Exertional Limitations: Occasionally lift less than 10 pounds with left arm, occasionally lift 10 pounds with right arm, frequently lift less than 10 pounds, stand and/or walk less than 2 hours in an 8 hour workday, periodically alternate between sitting and standing, and push and/or pull motions are limited to the upper extremities.

- Postural Limitations: Occasionally - climbing balancing, stooping, kneeling, crouching, and crawling.

- Manipulative Limitations: Reaching in all directions is limited and Handling and Fingering are limited in the left arm only.

- Communicative Limitations: Hearing is limited due to ringing in the ears.

- Environmental Limitations: Avoid concentrated exposure to Noise and Vibration. Avoid moderate exposure to Wetness, Humidity, and Hazards. Avoid all exposure to extreme cold.

- Patient is completely and totally disabled by fibromyalgia.

<u>Non-Treating Physicians</u>

<u>Grafton City Hospital, Tygart Valley Total Care Clinic</u>

<u>Treatment Notes, April 19, 1999 to April 26, 1999</u> (Tr. 453 - 455).

- Diagnosed with chronic back pain, irritable bowel, and fibromyalgia. Prescribed pain medication.

### Ronald D. Pearse, Ed.D., Consultive Psychologist

#### April 17, 1998 Psychological Consultative Examination (Tr. 415 - 417).

- Diagnosed with pain disorder associated with depressive symptoms and chronic back pain.

- Mood was depressed. Insight into his problems was fair.

- There was no indication of a formal thought disorder.

#### August 23, 1999 Mental Status Examination (Tr. 465- 472).

- No serious disturbance in mood was noted.

- There was no indication of a formal thought disorder

- Insights into his problems were limited.

- Judgment skills were average.

- His concentration was average.

#### August 23, 1999 Medical Assessment - Ability to do Work-Related Activities (Tr. 470-472).

- Making Occupational Adjustments: Fair - Use Judgment, deal with work stresses, function independently, and maintain attention/concentration.

- Due to physical pain, Mr. Thompson would have some impairment in his ability to deal with work stresses, and function with adequate attention and concentration.

- Making Performance Adjustments: Fair - Understand, remember, and carry-out complex job instructions.

- Making Personal - Social Adjustments: Fair - Behave in an emotionally stable

manner, relate predictably in social situations, and demonstrates reliability

- due to his chronic pain and fatigue, he would have difficulty interacting in a stable and reliable manner.

## Pravin I. Patel, M.D., Consultive Physician

### May 13, 1998 Disability Determination Service Report (Tr. 427 - 428).

- No muscle atrophy.
- Chronic back pain with back injury.
- Fibromyalgia
- Degenerative disc disease with herniation and spinal stenosis.
- Patient has some limitations to engage in gainful activities.

## Philip Fisher, D.O., Ph.D., Consultive Physician

### August 4, 2000 Examination and Report (Tr. 487 - 491).

- Diagnosed fibromyalgia, stiffness of the spine, and hypermobility in the wrists, fingers and other joints of the extremities.
- Diagnosed situational depression as a result of the chronic pain disorder. Recommended prescribing Paxil and Prozac or both.
- Prescribed Dilaudid for pain, prescribed Azulfidine for inflamation, and suggested prescribing Oxycontin.
- Tested his torque production of individual vertebral muscle groups in the cervical, thoracic and lumbar spine. Checked for validity, reproducibility, and consistency of effort.
- Performed a MedX Cervical, Thoracic, and Lumbar Torque Production Evaluation.

The results helped determine the location and extent of the patient's underlying pathology that has apparently contributed to the lack of functional rehabilitation progress.

- Found debility in all three vertebral levels in the cervical, thoracic and lumbar regions.

- Found that the intrinsic muscles of the cervical thoracic and lumbar spine have apparently reacted to the arthropathy by guarding and splinting to the point that they have become functionally useless.

Mary Ann Antonelli, M.D., Consultive Physician

August 12, 1999 Physical Examination (Tr. 473 - 477).

- Diagnosed chronic back pain and chronic generalized pain.

- Secondary to the pain, patient clearly is dysfunctional.

- Tenderness in every single area of muscle that was palpated.

- There were tender points in all of the traditional tender point areas for fibromyalgia, including the anterior part of the forehead.

- Neurological examination showed no evidence of weakness in the upper and lower extremities.

- No Cervical adenopathy or thyromegaly.

- He had a healing callus present in the medial surface of the left thumb.

- the lower extremities had full range of motion of both hips.

- Back range of motion showed 20 degrees of lateral rotation in both sides and of the thoracic vertebrae. He could easily flex at 25 degrees laterally in the thoracolumbar

area.

Joseph Kuzniar, Ed.D., State Agency Evaluation

April 28, 1998 Psychiatric Review (Tr. 418-426).

- Medical Disposition: Impairments not severe.

- Categories Upon Which the Medical Disposition is Based: 12.07 Somatoform Disorders.

- Organic Mental Disorders: No evidence with this diagnostic category.

- Schizophrenic, Paranoid and other Psychotic Disorders: No evidence with this diagnostic category.

- Affective Disorders: No evidence with this diagnostic category.

- Mental Retardation and Autism: No evidence with this diagnostic category.

- Anxiety Related Disorders: No evidence with this diagnostic category.

- Somatoform Disorders: Present - Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.

- Personality Disorders: No evidence with this diagnostic category.

- Substance Addiction Disorders: Absent

- Rating of Impairment Severity: Slight restriction of activities of daily living; no difficulties in maintaining social functioning; never deficient of concentration, persistence or pace resulting in failure to compete tasks in a timely manner; and never experiences episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.

Hugh M. Brown, M.D., Consultive Physician

December 15, 1998 Residual Functional Capacity Assessment (Tr. 440-447).

- Primary Diagnosis: Fibromyalgia

- Secondary Diagnosis: Lumbar Disc Disease

- Exertional Limitations: Occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk for a total of about 6 hours in an 8 hour workday, sit for a total of about 6 hours in an 8 hour workday, and push and/or pull motions are unlimited other than as shown for lift and/or carry.

- Postural Limitations: Occasionally - climbing balancing, stooping, kneeling, crouching, and crawling.

- Manipulative Limitations: None.

- Visual Limitations: None.

- Communicative Limitations: None.

- Environmental Limitations: None.

- Reviewed medical information from Dr. David Leveaux of 11-98, we do feel the Claimant's symptoms and degree of pain are somewhat credible, but we do feel the limitations and restrictions placed by Dr. Leveaux are excessive and disproportionate to objective findings.

Mark Spelsberg, M.D., Non-Examining State Agency Consultive Physician

May 27, 1998 Residual Functional Capacity Assessment (Tr. 432-439).

- Primary Diagnosis: Degenerative Disc Disease

- Secondary Diagnosis: Fibromyalgia

- Exertional Limitations: Occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of about 6 hours in an 8 hour workday, sit for a total of about 6 hours in an 8 hour workday, and push and/or pull motions are unlimited other than as shown for lift and/or carry.

- Postural Limitations: Occasionally - climbing balancing, stooping, kneeling, crouching, and crawling.

- Manipulative Limitations: None.

- Visual Limitations: None.

- Communicative Limitations: None.

- Environmental Limitations: None.

- Claimant's allegations of back pain are supported by x-rays and examinations and are considered credible. The severity of his symptoms allegations are somewhat exaggerated. He does have a medically determinable impairment.

**Testimonial Evidence**

<u>Claimant</u>

Testimony was taken at the hearing from Claimant. Questioning by the ALJ (Tr. 299-310):

Q.   Now, tell me, what is the main problem affecting your ability to do any kind of a job? Now, we're going to cover, I want to cover everything but let's just start with the thing that, in your mind, is the main thing that limits your ability to do any kind of work.

A.   The main thing that I find, you know, as far as handling any type of work, it's the debilitating pain that I suffer every day.

Q. And, let's see, this has been diagnosed as fibromyalgia, I take it?

A. That's one of my problems.

Q. Or miofascial pain syndrome?

A. That's another problem.

Q. I think they're the same usually but, in any event, that doesn't matter. How does the pain affect you? You said it's every day?

A. It just doesn't let up, you know, until most recently in the last, about year and a half, I took pain medication on an as-needed basis. It was, you know either, you know, Demerol and things of that nature that I would let the pain build up and build up to the point to where I can't move. I'm just crippled right up. My muscles are all knotted and twisted so a year and a half ago, I went to the doctor and he says, you know, you can't do that. What you're going to have to do is take medication on a regular basis because the medication will work better if you'll take it regularly. Well, I have been always against it because I have enough problems with the pain that I suffer and what he said that it would do is that it would keep the pain medication working all the time instead of just letting it build and then the medication don't work so well, so for the last, you know, May of 1998, I started taking the pain medication on a regular basis.

### 

Q. What is your sleep problem?

A. I wake up every couple of hours - the pain just gets so severe, without the medication, that it's just unbearable and if I don't take the medication, I just can't it's –

11

Q.    Are you able to get enough sleep to satisfy you?

A.    No...the pain just prohibits me getting back to sleep.

Q.    And now where is the pain located?

A.    The pain is all the way from the top of my neck, all the way to the bottom of my spine, all three sections of the spine.

Q.    Anywhere else?

A.    That's in regards to the damage done to the spine.  As far as other pain, I have pain in both, all four quadrants of my body, the leg, both legs, both arms, across the abdomen, across the chest, should blades.

Q.    Is it in all these places all the time or does it move around?

A.    All the time...the muscles are so – you can't even touch these things.  They'll knot and twist to the point to where you can't even touch the muscles, both arms, both shoulders, both knees – across the abdomen, across the chest and then right down the pine itself, which would be the spinal injury.  It's so inflamed on the spine itself, you can't even touch –

Q.    Now, is the pain at the same level all the time or does it change?  Does it go up or down, up and down?

A.    The only change I find in it is taking the medication.  When I take the medication – there's a relief in the thing but it never quits.  It's just steady.  When I don't take the medication, I can't even think straight from the amount of pain that I'm in...nothing

gets rid of the pain.

### 

Q.   Now, how far can you walk now considering all of these things...?

A.   Distance or time?  I can't – I'm in pain, to start out.  I'm worse whenever I walk to the mailbox and back, the pain is going to increase.  The pain increases worse, after I've done something, walk to the mailbox, if I try to do anything whether it be shaving, showering, it doesn't make no difference whatever I do, when I finally stop and sit in the chair, that's when all the muscles just commence to just know and twist and the pain just becomes worse.

### 

Questioning by Claimant's Counsel (Tr. 331-332):

Q.   Now, since your last application, last hearing which I think was in 1992, has your condition stayed the same, gotten worse or gotten better?

A.   It's gotten worse.

Q.   In what way?

A.   Just become more and more crippled, become more and more – muscles just knotting up, feels like someone is – you know, the muscles feel like someone has wrapped me with a stick, the back itself and the spine will just get burning, hot pain, just depending on activity.  It still try to do whatever I can.  It's not a lack of desire to try to do things.  It's just frustration.  I do things out of necessity.  I'll try to weed eat. I'll try to mow the grass.  I'll try to do whatever I can and all it does is just irritate my spine and muscles so bad that you don't want to be around me afterwards, but can't

afford to hire somebody to do it.

Q.    And I think you told the Judge you could sit maybe 20 minutes.  Is that -would you

be able to sit 20 minutes without assuming that posture of either arms on the table or

arms on the chair and pushing or –

A.    No, I can't.  I just – I have to have something to relieve it, either get up and start

moving or try to just – to free-stand or just let the weight of my upper body just lean

forward or back and forth, no, it will just get hot, burning pain in the spine.


III.    The Motions for Summary Judgment.

A.    Contentions of the Parties.  Claimant contends Commissioner's decision is not

supported by substantial evidence.   Specifically, Claimant contends that the ALJ's residual

functional capacity determination failed to take into account the findings in Thompson 1, the

restrictions offered by Dr. Pearse and the opinions offered by Dr. Antonelli, and did not include

limitations to which the plaintiff testified.  Claimant further contends that the Appeals Council erred

by failing to address new and material evidence and explain its refusal to review the ALJ's decision.

Commissioner contends her decision is supported by substantial evidence.   Specifically,

Commissioner alleges that the ALJ correctly determined that: 1) Claimant had the residual functional

capacity to perform his past relevant job; 2) Claimant was capable of performing light work which

allowed him to change positions; 3) Claimant's testimony was given the proper consideration; 4) the

Appeals Council properly found that the additional evidence would not reasonably change the ALJ's

decision; and 5) the Commissioner's decision is consistent with applicable law.

B.    The Standards.

1. Summary Judgment - Rule 56 Standards. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). However, Rule 56(c) itself provides that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. See also Charbonnage DeFrance v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (holding that summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

2. Social Security - Standard of Review. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hayes v. Sullivan, 907 F.2d 1453 (4th Cir. 1990). The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the

court's judgment for that of the Secretary. Id.

3. Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520 and 416.920 and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984).

4. Social Security - Substantial Evidence - Scope of Review - Weight Given to Relevant Evidence. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rational in crediting certain evidence in conducting our "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

5. Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(citations omitted).

6. Social Security - Substantial Evidence - Listed Impairment. In order for

the reviewing court to determine if the Secretary based the agency's decision on substantial evidence, the decision must include the reasons for the determination that the impairment does not meet or equal a listed impairment. Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ must identify the standard to be applied. Id. at 1173. The ALJ should compare each of the listed criteria to the evidence of Claimant's symptoms and explore all relevant facts. Id.

7. Evidence - Weight. The ALJ is required to indicate the weight given to all relevant evidence. Gordan v. Schweiker, 725 F.2d 231 (4th Cir. 1984). However, the ALJ is not required to discuss every piece of evidence. Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995).

8. Social Security - Substantial Evidence - Mental Impairment. With regard to development of the record, the pertinent inquiry is "whether the record contained sufficient medical evidence for the ALJ to make an informed decision as to alleged mental impairments." Mathews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989).

9. Development of Record. With regard to development of the record, the pertinent inquiry is "whether the record contained sufficient medical evidence for the ALJ to make an informed decision as to alleged mental impairments." Mathews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989).

10. Social Security - Medically Determinable Impairment- Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(1) - 423(d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11. Social Security - Medically Determinable Impairment. To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that

an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(1) - (3); <u>Heckler v. Campbell</u>, 461 U.S. 458, 461 (1983); 20 C.F.R. § 416.908 (1977); <u>Throckmorton v. United States Dep't of Health and Human Services</u>, 932 F.2d 295, 297 n.1 (1990).

      12.   <u>Social Security - Treating Physician</u>. The opinion of Claimant's treating physician is entitled to great weight and may only be disregarded if there is persuasive contradictory evidence. <u>Evans v. Heckler</u>, 734 F.2d 1012 (4th Cir. 1984).

      13.   <u>Social Security - Treating Physician - Controlling Weight</u>. Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources, when the opinion is 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and 2) "not inconsistent with other substantial evidence in the case record." Social Security Ruling (SSR) 96-2p. "Giving Controlling Weight to Treating Source Medical Opinions" (July 2, 1996).

      14.   <u>Social Security - Treating Physician - Opinion that Claimant is Disabled</u>. An opinion that a claimant is "disabled" is not a "medical opinion" within the definition of 20 C.F.R. § 404.1527. A statement by a medical source that Claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine that Claimant is disabled. 20 C.F.R. § 404.1527(e)(1). The Commissioner is responsible for making the determination whether a claimant meets the statutory definition of "disability." 20 C.F.R. § 404.1527(e)(1). No special significance will be given to the source of an opinion on issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(3).

      15.   <u>Social Security - Treating Physician - Not Entitled to Controlling Weight</u>.

When not entitled to controlling weight, the medical opinion of a treating physician is still entitled to deference and must be weighed according to the following five factors: 1) examining relationship, 2) treatment relationship, 3) supportability, 4) consistency, and 5) specialization. See 20 C.F.R. § 404.15427(d). When the ALJ denies (benefits), the ALJ will give good reasons in the notice of decision for the weight given to a treating source's medical opinion(s). See 20 C.F.R. §§ 404.1527 (d)(2) & 416.927.

16. Social Security - Treating Physician - Speculative Opinion. An ALJ is not bound to accept the opinion of a treating physician which is speculative and inconclusive. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

17. Social Security Treating Physician - Claimant's Credibility. An ALJ must consider Claimant's psychiatric evidence and make a credibility determination about Claimant. Hatcher v. Secretary, Health and Human Services, 898 F.2d 21, 23 (4th Cir. 1983).

18. Social Security - Subjective Complaints of Pain. Claimant's statements alone are not enough to establish that there is a physical or mental impairment. 20 C.F.R. §§ 404.1528(a) & 416.928(a). Claimant's statement about her pain or other symptoms will not alone establish that claimant is disabled. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). Pain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or lack thereof. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

19. Social Security - Claimant's Credibility - Craig v. Chater Pain Analysis. The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical

evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). The Commissioner will consider all of the available evidence, including claimant's medical history, the medical signs and laboratory findings and statements about how claimant's symptoms affect her. Id.

20. Evidence Considered in Evaluating the Intensity and Persistence of Claimant's Symptoms and Determining the Extent to Which Claimant's Symptoms Limit His/Her Capacity for Work. Information that claimant, claimant's treating or examining physician or psychologist, or other persons provide about claimant's pain or other symptoms; any symptom-related functional limitations and restrictions which claimant, claimant's treating or examining physician or psychologist, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence; all of the evidence presented, including information about claimant's prior work record, claimant's statements about her symptoms, evidence submitted by claimant's treating physician or psychologist, and observations by our employees and other persons; and factors relevant to claimant's symptoms - (i) daily activities, (ii) location, duration, frequency and intensity of pain and other symptoms, (iii) precipitating and aggravating factors, (iv) type, dosage and side effects of pain medication claimant takes or has taken to alleviate pain or other symptoms, (v) treatment, other than medication, claimant receives or has received for relief of pain or other symptoms, (vi) any measure claimant uses or has used to relieve pain or other symptoms, and (vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

21.     Social Security - Impairment- Supported by Medical Evidence.  To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.   42 U.S.C. § 423(d)(1)-(3);   20 C.F.R. § 416.908 (1977); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v. United States Dep't of Health and Human Services, 932 F.2d 295, 297 n.1 (4th Cir. 1990).

22.     Social Security - Mental Disorders -- Supported by Medical Evidence. The evaluation of disability on the basis of mental disorders requires the documentation of a medically determinable impairment(s) as well as consideration of the degree of limitation such impairment(s) may impose on the individual's ability to work and whether these limitations have lasted or are expected to last for a continuous period of at least 12 months. 20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 12.00.

23.     Mental Disorders.   The evaluation of disability on the basis of mental disorders requires the documentation of a medically determinable impairment(s) as well as consideration of the degree of limitation such impairment(s) may impose on the individual's ability to work and whether these limitations have lasted or are expected to last for a continuous period of at least 12 months. 20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 12.00.

24.     Mental Disorders- Affective Disorders.   The required level of severity for these disorders is met when the requirements in both A and B are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

25.     Social Security - Impairment.  To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that an impairment, physical or

mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1)(3); Heckler v. Campbell, 461 U.S. 458, 461 (1983); 20 C.F.R. § 416.908 (1977); Throckmorton v. United States Dep't of Health and Human Services, 932 F.2d 295, 297 n.1 (4th Cir. 1990).

26. Limitation of Actions. 42 U.S.C. § 405(g) provides that any person seeking a review of final decision by the Commissioner must file a civil action within "sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner may allow." Section 405(g) imposes a sixty-day limitation which in rare cases can be tolled. Bowen v. City of New York, 476 U.S. at 467 (1986).

27. Social Security - New Evidence - Consideration by Appeals Council. Pursuant to 20 C.F.R. § 404.970(b), the Appeals Council shall consider evidence submitted with a request for review if the evidence is new, material, and relates to the period on or before the dates of the ALJ's decision. The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990).

28. Social Security - New Evidence - Consideration by Appeals Council- Specific Findings. The Appeals Council commits reversible error when it fails to make specific findings concerning relevant and material evidence submitted after the Administrative Law Judge's decision. Myers v. Califano, 611 F.2d 980, 983 (4th Cir.1980). Absent specific findings, the reviewing court can not determine whether the findings are supported by substantial evidence. Id.

29. Social Security - New Evidence. Evidence is not "new" if other evidence

specifically addresses the issue.  Wilkins v. Secretary, Department of Health and Human Services, 953 F.2d 93, 96 (4th Cir. 1991).

30.    Social Security - New Evidence - Materiality.  Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.  Wilkins v. Secretary, Department of Health and Human Services, 953 F.2d 93, 96 (4th Cir. 1991).

31.    Social Security - New Evidence - Power to Remand.  The Court has the power to remand a case to the Commissioner "only upon a showing that there is new evidence, which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C.§ 405(g); Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985).  Therefore, in order for the remedy of remand to be appropriate, Claimant bears the burden of proving three things: 1) that the evidence is new, 2) that the evidence is material, and 3) that there is good cause for Claimant's failure to incorporate the evidence into the record at a prior proceeding.  New evidence remands, under Section 405(g) should be narrowly circumscribed.  Wilkins v. Secretary, Dept. of Health and Human Services, 925 F.2d 769(4th Cir. 1991) (citing Brown v. Schweiker, 557 F. Supp. 190, 193-94 (M.D. Fla. 1983)).

32.    Social Security - New Evidence -Remand - Burden on Claimant.
"A claimant seeking remand on the basis of new evidence under 42 U.S.C. § 405(g) must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier.  Wilkins v. Secretary, Department of Health and Human Services, 953 F.2d 93, 96 (4th Cir. 1991).

33.    Social Security New and Material Evidence - Defined. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.  Wilkins

v. Secretary, Department of Health and Human Services, 953 F.2d 93, 96 (4th Cir. 1991). Evidence is not "new" if other evidence specifically addresses the issue. Id.

34. Social Security - Consultative Examination. A consultative examination is required when "the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on [the] claim." 20 C.F.R. § 404.1519(a)(b). The regulations do not require the ALJ to order a consultative evaluation of every alleged impairment. Mathews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989). They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. See 20 C.F.R. S 416.917(a); Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.1986) (per curiam); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 214 (6th Cir.1986).

35. Social Security - Residual Functional Capacity. A Residual Functional Capacity is what Claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545 & 416.945. Residual Functional Capacity is an assessment based upon all of the relevant evidence. Id. It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical condition. Id. Observations by treating physicians, psychologists, family, neighbors, friends, or other persons, of Claimant's limitations may be used. Id. These descriptions and observations must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities. Id. This assessment is not a decision on whether a Claimant is disabled, but is used as the basis for determining the particular types of work a Clamant may be able to do despite their impairments. Id.

36. Social Security - Subsequent Applications. "SSA treats a claimant's second

or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 476 (4th Cir. 1999). "To the extent that a second or successive application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of [claim] preclusion apply with full force." Id.

C.      Discussion.

### Consideration of Prior ALJ Findings

Claimant contends that when ruling on the current SSI claim the ALJ failed to properly consider a residual functional capacity assessment contained in the prior disability decision of September 22, 1993. The previous residual functional capacity assessment limited Claimant to a range of sedentary work in which he is prevented from stooping or bending, using his legs or feet for pedal controls, and that he be permitted to change position frequently from sitting to standing. (Tr. 19). In contrast, the ALJ's current decision found that Claimant was capable of light work. (Tr. 24). Claimant argues that the ALJ must consider a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. Claimant contends that, although the ALJ incorporated the prior file and all its parts into the record of the present claim, the ALJ failed to evaluate the previous claim's findings as evidence, compare those findings with the new evidence generated since the previous findings were made, and consider the previous findings correctly.

Commissioner counters that each successive application for benefits comprises a different time period and must be separately and independently adjudicated de novo. Commissioner contends that the appropriate inquiry is whether Claimant could perform light work during the relevant time

25

period, which is between the date of the SSI application, January 30, 1998, and the date of the ALJ's decision, October 28, 1999.

Claimant argues that when reviewing successive disability claims, the ALJ must follow Social Security Acquiescence Ruling 00-1(4) ("AR 00-1"). Acquiescence Rulings explain how the Social Security Administration ("SSA") will apply decisions of the United States Courts of Appeals that are at variance with SSA's national policies in adjudicating claims under Title II and Title XVI of the Social Security Act. Acquiescence Rulings only apply to the disability claims that arise in the states that comprise that particular Circuit Court of Appeals. Although Acquiescence Rulings do not have the force of law or regulations, pursuant to 20 C.F.R. § 402.35(b)(2) of the Social Security Administration Regulations they are binding on all components of SSA.

Claimant's argument that AR 00-1 must be applied in this case is incorrect. AR 00-1 is the current approach to adjudicating successive claims; however, AR 00-1 had not been promulgated when the ALJ rendered his decision in this case - September 29, 1999. It is manifest that an ALJ cannot adhere to a binding regulation if the regulation is not yet in effect. When the ALJ rendered his decision in this case, the approach to adjudicating successive disability claims was, and continues to be, governed by the holding in Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999). In Albright, the Court held that, "[t]he SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." Id. at 476. Moreover, "to the extent that a second or successive application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of [claim] preclusion apply with full force." Id. The Court determined that this approach to successive claims

was, "eminently logical and sensible, reflecting the reality that the mere passage of time often has a deleterious effect on a claimant's physical or mental condition." Id. When rendering a decision on a subsequent claim, the appropriate review is whether the ALJ's decision is supported by substantial evidence for that unadjudicated time period. Id. at 477-78.

There are two time periods relevant to the disposition of this case. Time period one is the adjudicated period in Thompson I, July 27, 1990 to September 22, 1992. Time period two is the unadjudicated period beginning with the date of the ALJ's decision in Thompson I, Sept 22, 1992, and ending with the decision in this case, October 28, 1999. Time period two also includes the unadjudicated period from the date in Thompson II that Claimant alleges he was unable to work, July 1, 1990, to the date in Thompson I that Claimant alleges he was unable to work, July 27, 1990.

Time period one has no bearing on this appeal because claim preclusion applies. Albright, F.3d at 476. In Thompson I, Claimant was adjudicated not disabled for the period from July 27, 1990 to September 22, 1992. That determination is binding on Claimant and cannot be relitigated. See 42 U.S.C. § 405(h) ("[t]he findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.").

The more important issue in this case concerns the previously unadjudicated period - time period two. Specifically, the Court must determine whether Claimant's assertion that the ALJ in this case must evaluate the previous findings as evidence, compare those findings with the evidence generated since Thompson I, and give those findings their appropriate consideration is the correct method of review. Claimant's assertion misstates the holding of Albright. In Albright, the Court held that when a time lapse of more than three years occurs between applications, it is entirely plausible that the results of a residual functional capacity assessment may change. 174 F.3d at 473

(citing Rucker v. Chater, 92 F.3d 492, 495 (7th Cir. 1996)). Given this holding, the appropriate review of a subsequent claim for benefits is whether the subsequent finding, in this case whether Claimant retains the residual functional capacity to perform light work, is supported by substantial evidence. Id. at 477-78.

It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. Id. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted). Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Id.

In this case the ALJ made a residual functional capacity assessment based on several factors including a residual functional capacity assessment conducted by the Claimant's treating physician, opinions of consulting physicians including a psychologist and rheumatologist, and an opinion of a non-examining state agency medical consultant. The ALJ gave less weight to the opinion's of Claimant's treating physician because he is not a specialist in any particular field of medicine and he simply listed Claimant's subjective complaints in support of his opinions. The ALJ found that the treating physician's opinion was not entirely consistent with the claimant's lack of regular medical treatment in 1997 and 1998. In contrast, the ALJ gave substantial weight to the opinions of a consultive rheumatologist because her findings were supported by her own clinical examination and were consistent with the record as a whole. The ALJ was also persuaded by the opinion of the

state agency medical consultant that Claimant could perform a range of light work and that Claimant's allegations of the severity of his symptoms were somewhat exaggerated. The ALJ gave great weight to the opinion of the consulting psychologist who, after two separate examinations, determined that Claimant was capable of a limited range of full-time work. Finally, the ALJ found that in the Claimant's previous job as a manager of an asbestos removal company, he was not required to lift more than 20 pounds, sit for prolonged periods, or remain on his feet for prolonged periods. Because Claimant's past work did not require the performance of activities precluded by his medically determinable impairment, if any, he was able to return to his previous work.

The evidence summarized above adds up to more than a mere scintilla. Accordingly, the ALJ's finding that Claimant retains the residual functional capacity to perform a range of light work is supported by substantial evidence.

### Opinion of Consulting Psychologist

Claimant contends that the ALJ failed to include in his residual functional capacity determination the restrictions offered by the consulting psychologist, Dr. Ronald Pearse. During the claimant's evaluation, Dr. Pearse completed a medical assessment form and concluded that Claimant only had a "fair" ability to function in a number of areas. (Tr. 470-71). Fair is defined on the form as "ability to function in this area is seriously limited, but not precluded." (Tr. 470). Claimant argues that the ALJ made a determination that contained no psychological limitations when Dr. Pearse's evaluation only allowed for a limited range of full-time work. Claimant further contends that a new hearing must be held because the vocational expert testified that Claimant's past work was skilled in nature and a person who is "significantly limited in concentration" would be unable to perform skilled work.

The Commissioner counters that the consulting psychologist evaluated Claimant on two occasions and found no significant mental abnormality. Commissioner contends that great weight was given to Dr. Pearse's findings and the ALJ may give more weight to clinical findings than to the check-offs on a medical assessment form. Commissioner further contends that, at the first psychiatric examination, the psychologist reported that Claimant had the ability to understand complex, detailed, and simple instructions and, at the second examination, the psychologist reported that Claimant's concentration level was average. (Tr. 467). Commissioner argues that these two findings do not rise to a level of being "significantly limited in concentration."

When a claimant's impairments do not meet or equal a listed impairment but those impairments are found to be more than "not severe," Claimant's residual functional capacity must be determined. SSR 85-16. In order to do a proper evaluation of the severity of mental impairments, the ALJ must consider the factors contained in section 12.00 of the Listing of Impairments in Appendix 1. SSR 85-16. The factors contained in section 12.00 are separated into four broad functional areas in which the Commissioner rates the degree of Claimant's function limitations, specifically, (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of decompensation. 20 C.F.R. § 404.1520(a). Moreover "[i]t is the responsibility of the...ALJ...to identify the pertinent evidence from medical and non-medical reports and to make findings as to the individual's ability to perform work-related activities (RFC). The determination of impairment severity and the resulting RFC constitute the medical evaluation of the mental disorder. The determination of 'disability,' however, depends upon the extent to which the individual has the vocational qualifications to perform work, in light of the restrictions described in the RFC assessment." SSR 85-16.

In this case, the ALJ found that Claimant's impairments did not meet or equal a listed impairment and that they were more than not severe. (Tr. 14). The ALJ then completed a RFC Assessment, as required. (Tr. 18). Although the ALJ did not specifically address the four broad categories of section 404.1520(a) within his RFC assessment, the factors considered in step three of the five step disability analysis to determine whether the Claimant's impairments are severe are the same factors to be considered in a RFC Assessment. SSA 85-16 ([c]onsideration of these factors, which are contained in section 12.00 of the Listing of Impairments in Appendix 1, is required for the proper evaluation of the severity of mental impairments."). When the ALJ determined whether Claimant's impairments were severe, step three of the sequential analysis, he reviewed Claimant's mental limitations, including a review of the four broad categories of section 404.1520(a). (Tr. 16-18). Although this review took place at the incorrect step of the sequential analysis, the "ALJ need only review medical evidence once in his decision." McCartney v. Apfel, No. 01-1439, slip op. 277, 279 (4th Cir. Feb. 7, 2002) (available at 2002 WL 191573).[7] In addition, with regard to development of the record, the pertinent inquiry is "whether the record contained sufficient medical evidence for the ALJ to make an informed decision as to alleged mental impairments." Mathews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989).

The ALJ's decision contains sufficient medical evidence, albeit at step three of the sequential analysis, to support his decision in the RFC Assessment that Claimant has no mental impairments that prohibits him from performing light work. (Tr. 23). The ALJ relied on Dr. Pearse's report of April 17, 1998 to find that Claimant was able to bathe and dress himself and that Claimant did not

---

[7]This Court recognizes that the Court of Appeals for the Fourth Circuit disfavors citation to unpublished opinions. I recognize the reasons for that position and acknowledge it. Unfortunately, there is not a better indicator of what its decision might be in this regard.

display any disturbing interpersonal behaviors that would affect the quality of his work or social relationships. (Tr. 17). Based on the same examination, the ALJ found that Claimant's pace and motivation were good and Claimant demonstrated an ability to understand complex, detailed, and simple instructions. Id. A State Agency evaluation, completed on April 28, 1998 and reviewed and affirmed by Joseph Kuzniar, Ed.D., on December 7, 1998, found that Claimant had somatoform disorders, which imposed slight restriction of activities of daily living; no difficulties in maintaining social functioning; no deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere); and no episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation. Id. The ALJ further relied on a second report by Dr. Pearse that found that in a subsequent evaluation conducted on August 25, 1999 Claimant was able to attend to his own personal hygiene, his social interactions were within normal limits, his concentration and persistence were average, and his pace was within normal limits. Id.

In light of the medical evidence summarized above, the record contained sufficient evidence for the ALJ to make an informed decision as to alleged mental impairments. Accordingly, the ALJ did not err in finding in his RFC Assessment that Claimant had no mental impairments.

### Opinion of Consulting Rheumatologist

Claimant contends that in the residual functional capacity assessment the ALJ failed to account for the opinions of consulting rheumatologist, Dr. Mary Ann Antonelli. The rheumatologist's opinion stated that Claimant was suffering from pain and as a result suffered from significant psychological overlay and was dysfunctional.

Commissioner contends that the rheumatologist noted trigger points for fibromyalgia, but

Claimant was not diagnosed with fibromyalgia. Commissioner argues that the mere presence of fibromyalgia does not entitle a claimant to disability payments. Commissioner further contends that in order to receive SSI, there must be functional limitations that prevent the claimant from working, none of which are present in this case. Commissioner asserts that the ALJ's functional capacity finding is not at odds with Dr. Antonelli's clinical assessment.

It is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence. Hayes, 907 F.2d at 1456. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Secretary. Id. As has been discussed previously in this report, the ALJ made a residual functional capacity assessment based on several factors including a residual functional capacity assessment conducted by the Claimant's treating physician, opinions of consulting physicians including a psychologist and rheumatologist, and an opinion of a non-examining state agency medical consultant. [Tr. 18-22]. The ALJ gave substantial weight to the opinions of the consultive rheumatologist, Dr. Antonelli, because her findings were well supported by her own clinical examination and were consistent with the record as a whole. [Tr. 23]. The ALJ found that Dr. Antonelli noted a healing callous on Claimant's left thumb, and had a positive straight-leg raising test while the Claimant was lying supine but negative while seated. [Tr. 21]. Dr. Antonelli saw no clear dysphoria and recommended that the Claimant return to her for further treatment only as needed. Id.

As summarized above, substantial evidence supports the ALJ's finding that Claimant has the residual functional capacity to perform the exertional demands of light work. Specifically, substantial evidence supports the ALJ's finding that Claimant can return to his prior work as a

manager for asbestos removal companies.

## Claimant's Testimony

Claimant contends that when making his RFC Assessment, the ALJ failed to adequately consider Claimant's testimony about the severity of the pain from which he suffers. Claimant argues that the ALJ erred by merely reciting Claimant's testimony regarding his pain and reciting portions of the medical evidence. Claimant argues that the ALJ must explain why he did not believe Claimant's testimony and what he did not believe about Claimant's testimony. Claimant contends that the ALJ's determination did not provide the reasons for completely ignoring his testimony regarding his limitations and the degree of pain with which he suffers.

Commissioner counters that the ALJ properly weighed Claimant's testimony and credibility determinations are for the ALJ to make. Commissioner argues that ALJ properly weighed the evidence and determined that Claimant's subjective symptoms were somewhat exaggerated and not fully credible.

Again, it is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence. Hayes, 907 F.2d at 1456. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Secretary. Id. In addition, the RFC is an assessment based upon all the relevant evidence, not just Claimant's testimony. 20 C.F.R. §§ 404.1545 & 416.945. As has been discussed previously in this report, the ALJ made a RFC assessment based on several factors, including a RFC assessment conducted by the Claimant's treating physician, opinions of consulting physicians including a psychologist and rheumatologist, and an opinion of a non-examining state agency medical consultant.

Moreover, the determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996).

In this case, the ALJ made the following determination at step one of the Craig analysis: "[w]hile his subjective complaints are reasonable in the sense of possibly being produced by the impairments he has, his alleged functional restrictions are disproportionate to the objective medical evidence." (Tr. 18). Since the Claimant met the threshold standard of the Craig analysis, the ALJ then applied the second step by evaluating not only the Claimant's subjective statements of his pain, but "all the available evidence, including the Claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain, and any other evidence relevant to the severity of the impairment, such as evidence of the Claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Id. at 595 (citing 20 C.F.R. §§ 404.1529 & 416.929).

In conducting this second step analysis, the ALJ considered the claimant's testimony that due to his pain he has side effects of short term memory loss and fatigue. The ALJ determined, however, that these side effects were not substantiated by the medical record, which documented no significant, ongoing side effects to medication or treatment. (Tr. 19). Claimant also testified that his daily activities were limited to watching television and that he did not engage in activities such as gardening and yard work. The ALJ found that these statements conflicted with statements the

Claimant had made to Dr. Antonelli that he could mow his lawn on a riding mower and he was responsible for the daily care of his three children.  Id.  The ALJ further considered medical evaluations conducted by Dr. Leveaux, Claimant's treating physician, Drs. Patel, Brown, Antonelli, and Pearse, consulting physicians, and Dr. Spelsberg, a non-examining State Agency medical consultant.  After evaluating all the available evidence, the ALJ determined that Claimant retained the RFC to perform the exertional demands of light work.  This determination was supported by substantial, objective medical evidence and therefore, the ALJ properly found at step two of the Craig analysis that Claimant's pain did not limit him from performing light work.  Accordingly, the ALJ did not err when he considered the Claimant's testimony when making his RFC assessment.

### Appeals Council's Consideration of New and Material Evidence

Claimant contends that he presented additional medical evidence during the Appeals Council review process that directly contradicts the ALJ's findings.  Claimant contends that the Appeals Council improperly admitted this evidence and concluded that it did not provide a basis for changing the ALJ's decision without explanation of the weight it afforded that new evidence.  Claimant contends that the Appeals Council must explain the weight it affords evidence that directly contradicts the ALJ's findings.

Commissioner counters that the Appeals Council is not required to provide detailed reasons for finding that the additional evidence did not provide a basis for changing the ALJ's decision.  Commissioner contends that the additional evidence submitted does not establish that Claimant is disabled.  Commissioner further maintains that the additional evidence does not state or suggest that Claimant is incapable of performing light work nor did Claimant present any clinical or laboratory diagnostic findings suggesting he could not perform light work.

This claim should be remanded to the Appeals Council for findings of fact regarding the August 4, 2000 report of Dr. Fisher. After an unfavorable decision from the ALJ, Claimant submitted to the Appeals Council a letter from her representative (Tr. 478-486) and a report from Dr. Fisher, a consulting physician. The report of Dr. Fisher is relevant and material to a determination of Claimant's ability to work. The Appeals Council failed to indicate the weight given to Dr. Fisher's report and did not make specific findings regarding this report. Notwithstanding an unpublished Fourth Circuit panel opinion to the contrary, see Hollar v. Commissioner of the Social Security Administration, No. 98-2748, 1999 WL 753999, at *1 (4th Cir. Sept. 23, 1999), cert denied, 530 U.S. 1219 (2000); but see, Harmon v. Apfel, 103 F. Supp. 2d 869, 872 (D.S.C. 2000) ("[b]ecause this court is not convinced by the Hollar panel's perfunctory analysis, the court declines to follow the unpublished opinion"), the Appeals Council must explicitly state the weight given to relevant evidence. Myers v. Califano, 611 F.2d 980, 983 (4th Cir. 1980). The Appeals Council's failure to make specific findings concerning relevant and material evidence submitted after the ALJ's decision constitutes reversible error. Id.

D. Recommendation. For the foregoing reasons, I recommend Defendant's Motion for Summary Judgment be DENIED, and Plaintiff's Motion for Summary Judgment be DENIED. I recommend this matter be REMANDED to the Appeals Council to make specific findings regarding the consulting physician's report, Dr. Fisher, and to indicate the weight it gave to that report.

Any party who appears pro se and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which

objection is made, and the basis for such objection.   Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear pro se and any counsel of record, as applicable.

DATED: September 16, 2002

JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE